

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
~~XXXXXXXXXXXXXXX~~
ATTORNEY GENERAL.

AUSTIN 11, TEXAS

Honorable T.M. Trimble
First Ass't State Superintendent
Department of Education
Austin, Texas

Opinion No. O-7042
Re: Under the provisions of Senate
Bill 167, Sec. 2, Acts 1945,
49th Legislature, Regular Session,
would a common school district be
eligible for aid if the valua-
tion of the property located
therein for the school year 1945-
46 was set at a figure less than
that of the previous year?

Your letter of recent date requesting an opinion on the above
subject has been received and given careful consideration. We are quoting
below the body of the letter you received from Mr. H.C. Hinton, as well
as the second paragraph of your letter.

"Article 1, Section 2, Paragraph 2 of the
Equalization Aid Law reads, 'no. school district will
be eligible for aid under the provisions of this Act
. . . . which has reduced its tax valuation in order
to show budgetary need.'

"Budgetary need is defined in Article 1, Sec-
tion 5, Paragraph 1, as 'the difference between the
total of all revenues of the district and the total
of all operating expense if such expenses are greater
than the revenues.'

"Please ask the Attorney Generelto give us an
opinion on the following question.

"Would a school district that shows budgetary
need using 1944-45 assessed valuation be ineligible
for aid if the valuation of the district for the school
year 1945-46 is less than that of the previous year?"

The second paragraph of your letter is as follows:

". . . . . .

"This question is brought about because the Com-
missioners' Court of El Paso County requested the County
Assessor to lower county valuations in view of the fact
that it was not necessary to maintain last year's valua-

tions in order to secure enough county taxes to operate
the county government. When the county valuations were
reduced, of course, the valuations for school purposes
in common School districts were likewise reduced.

" . . . . ."

Section 2 of Senate Bill No. 167, as passed by the 49th
Legislature, Regular Session, 1945, reads in part as follows:

"Sec. 2.  Tax levy.  No school district shall be
eligible to receive any type of aid authorized under
the provisions of this Act unless it shall be providing
for the annual support of its schools by voting, levying,
and collecting for the current school year a local main-
tenance school tax of not less than Fifty Cents (50¢) on
the One Hundred Dollars ($100.00) of property valuation
in the entire district.  The property valuations shall
not be less than said property is valued for state and
county purposes.  The income from such a maintenance tax
in excess of the required Fifty Cents (50¢) maintenance
tax must first be used to retire indebtedness, if any, in
the local and Equalization (Rural Aid) schoolfunds.  After
the indebtedness in these funds, if any, has been retired
the income from this maintenance tax in excess of the
required Fifty Cents (50¢) maintenance tax may be used
at the discretion of the local school authorities of the
district for any lawful school purpose except increasing
or supplementing any teacher's or administrative salaries.
Any or all maintenancetax above Fifty Cents (50¢) may not
be included in the calculation of need for aid, but shall
be reported in the budget with an itemized statement of
its expenditure.  If the income from the maintenance tax
above Fifty Cents (50¢) is not spent asprescribed herein,
it shall be included as receipts in the budget.  In order
to comply with the terms of this section, it shall be
necessary for such school districts applying for any type of
aid authorized under the terms of this Act, to report
all valuations within such districts, including all con-
solidated districts and annexed districts, and failure to
report all such valuations shall prevent such district from
receiving any type of aid authorized under this Act.

"No school district will be eligible for aid under
the provisions of this Act which has reduced its tax rate
within the two years immediately preceding the year for
which aid is applied for hereunder or which has reduced
its tax valuation in order to show budgetary need."

Article 2795, Vernon's Annotated  Civil Statutes, reads
as follows:

"The Commissioners court, at the time of levying
taxes for county purposes, shall also levy upon all
taxable property within any common school district the

rate of tax so voted if a specific rate has been voted;
otherwise said court shall levy such a rate within the
limit so voted as has been determined by the board of
trustees of said district and the county superintendent
and certified to said court by the county superintendent.
If such tax has been voted after the levy of county taxes,
it shall be levied at any meeting of said court prior to
the delivery of the assessment rolls by the assessor. The
tax assessor shall assess said tax as other taxes are
assessed and make an abstract showing the amount of special
taxes assessed against each school district in his county
and furnish the same to the county superintendent on or
before the first day of September of the year for which
such taxes are assessed. The taxes levied upon the real
property in said districts shall be a lien thereon and
the same shall be sold for unpaid taxes in the manner
and at the time of sales for State and county taxes. The
tax collector shall collect said taxes as other taxes are
collected. The tax assessor shall receive a commission
of one-half of one per cent for assessing such tax and
the tax collector a commission of one-half of one per cent
for collecting the same. The tax collector shall pay all
such taxes to the county treasurer, and said treasurer
shall credit each school district with the amount belong-
ing to it, and pay out the same in accordance with law.
Acts 1921, p. 56."

We find no statutory authority which would permit a common
school district to place a different value on its property, that is,
property located within its area from that which would be placed on it
by the county tax assessor or the Commissioners' Court for State and county
tax purposes. Therefore, when the county commissioners elected to lower
the valuation of property in the county for county tax purposes there
was an automatic reduction of the value for school purposes. The common
school district or the common school district trustees had no voice in
the matter whatsoever and we cannot say that they "reduced the tax valu-
ation in order to show budgetary needs."

It is our opinion, therefore, that a common school district
that shows a budgetary need, using either the 1944-45 or the 1945-46
assessed valuation under the fact situation you presented would be en-
titled to aid under the provisions of Senate Bill No. 167, provided, of
course, it meets the requisites of other provisions in the bill.

Trusting the above satisfactorily answers your inquiry,
we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/E.M. DeGeurin
E.M. DeGeurin
Assistant

EMDeG:BT:wc

APPROVED FEB 20, 1946
s/ Cerlos C.Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman